**Jonathan Gersten**, OSB #191582
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PENDLETON DIVISION

| | |
|---|---|
| BALTAZAR DELGADO,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>OREGON DEPARTMENT OF CORRECTIONS, an agency of the STATE OF OREGON; SUE WASHBURN, FORMER SUPERINTENDENT, EOCI; DAVID PEDRO, FORMER ASSISTANT SUPERINTENDENT OF SECURITY, EOCI; OFFICER R. PAGLIARULO; OFFICER T. BROWNELL, and LIEUTENANT K. HOGELAND.<br><br>　　　　　Defendants. | Case No.<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983); and State Torts (Negligence)<br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

　　　This is a Civil Rights and State Torts action stemming from Defendants' unconstitutional and unreasonable failure to provide Plaintiff Baltazar Delgado with proper methods of decontamination after he was directly sprayed with several bursts of Oleoresin Capsicum (OC) spray while incarcerated at the Eastern Oregon Correctional Institution (EOCI). Plaintiff sat in the disciplinary segregation unit (DSU) intake cell, in pain and without decontamination, for over two hours. Once correctional officers directed Plaintiff to his cell, Plaintiff had to ask for a

COMPLAINT
Page 1 of 10

shower. He was provided only a hot shower, which reactivated the OC spray and caused Plaintiff excruciating pain all over his body for hours following the shower. Two days later, he asked for another shower, but again Defendants only provided Plaintiff with a hot shower. The second hot shower reactivated the OC spray and resulted in pain. Plaintiff then subsequently asked the EOCI staff via kite why he was provided only a hot shower. After no response was provided, Plaintiff filed a grievance. As a result of Defendants' actions and omissions, Plaintiff suffered unnecessary physical and mental pain and suffering. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges defendants violated his Eighth Amendment rights resulting in his injuries. Plaintiff also alleges Defendants were negligent in their failure to provide him with decontamination after his OC exposure. Plaintiff seeks awards of economic damages, non-economic damages and attorney fees and costs against defendants.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Pendleton, Umatilla County, Oregon.

## PARTIES

3. Plaintiff Baltazar Delgado is an adult who currently resides in Salem, Oregon, at the Oregon State Correctional Institution (OSCI). At the time of the allegations made herein, Mr. Delgado resided at EOCI.

4.      At the time of the allegations made herein, Defendant Sue Washburn was the Superintendent at EOCI acting within the course and scope of her employment with the State of Oregon. She is sued in her individual capacity.

5.      At the time of the allegations made herein, Defendant David Pedro was the Assistant Superintendent of Security at EOCI acting within the course and scope of his employment with the State of Oregon. He is sued in her individual capacity.

6.      At the time of the allegations made herein, Officer Pagliarulo was a corrections officer at EOCI acting within the course and scope of his employment with the State of Oregon. He is sued in his individual capacity.

7.      At the time of the allegations made herein, Officer Brownell was a corrections officer at EOCI acting within the course and scope of his employment with the State of Oregon. He is sued in his individual capacity.

8.      At the time of the allegations made herein, Lieutenant Hogeland was a corrections officer at EOCI acting within the course and scope of his employment with the State of Oregon. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

9.      At all times material herein, defendants acted under the color of state law.

10.     On June 3, 2021, at approximately 2:15pm, Plaintiff was entering the West Compound of EOCI from the yard.

11.     A large fight broke out during the movement, which involved fourteen AICs. The plaintiff was involved in the fight. Sergeant Pitner and Officer Fitzgerald both deployed OC spray directly upon Plaintiff to break up the fight.

12. Soon thereafter, Sergeant Pitner used an arm takedown to place Plaintiff on the ground and take control of the fight.

13. After corrections officers (COs) broke up the fight, Plaintiff was taken to the disciplinary segregation unit (DSU), along with several other participants. Plaintiff was among the last participants received at DSU.

14. ODOC policy requires officers to offer a shower to an inmate who was directly sprayed with chemical agents as soon as possible after the inmate or situation is under control. OAR 291-013-0104(5)(k).

15. ODOC officers placed Plaintiff into a DSU holding cell for several hours.

16. As a result of direct contact with the OC spray, Plaintiff could not open his eyes for over an hour. An officer offered Plaintiff two wet rags, which he accepted; but, the provided little relief from the pain of the spray. Additionally, Plaintiff could not change out of his clothes, which prolonged his exposure to the pain caused by the OC spray. His exposure to the OC spray caused intense pain, burning and anxiety.

17. Plaintiff struggled to respond to questioning about the fight given the burning sensation on his face and inability to open his eyes.

18. It was only after Officer Pagliarulo completed the DSU intake that Plaintiff was able to change clothes. He was not offered a shower.

19. Beyond that, no officer or medical staff offered Plaintiff an opportunity to shower or any other decontamination options. Medical staff asked about injuries but did not offer him a shower.

20. After officers questioned Plaintiff, an officer placed Plaintiff into a DSU cell. After arriving in his cell and eating dinner covered in OC spray, Plaintiff sought out an officer to

request a shower (between 5:45 and 6:00pm), because he was not offered one. Officer Brownell responded to Plaintiff's shower request. During the transport to the shower, Officer Pagliarulo confirmed with Officer Brownell that Plaintiff had been sprayed during the fight.

21. Officer Brownell brought Plaintiff to a hot shower; the only option provided to him. The hot shower exacerbated Plaintiff's pain. Additionally, the shower spread the effects of the OC spray to Plaintiff's entire body, including his genitals. Plaintiff felt like his skin was melting.

22. On June 5, 2021, Plaintiff's shower reactivated the burning sensation. Following this shower, Plaintiff sent a kite asking why he was placed in a hot shower given its impact on people exposed to OC spray. The DSU of EOCI contains designated cold showers for decontamination, yet the DSU staff failed to provide Plaintiff with a cold shower.

23. Lieutenant Hogeland investigated the incident and reported that Plaintiff refused all decontamination. However, no officer or staff presented Plaintiff with decontamination options aside from the two wet rags provided by a DSU officer. The lieutenant also stated that they could not offer cold showers at that time.

24. ODOC denied Plaintiff's Final Grievance Appeal on August 31, 2021.

25. Plaintiff filed a Tort Claim Notice on or about August 9, 2021.

**SUPERVISOR LIABILITY ALLEGATIONS**

26. Defendants Pedro and Washburn ("supervisory defendants") are liable for the actions of the above-named Defendants in a supervisory capacity. Prior to June 3, 2021, supervisory defendants were aware of the pain and suffering that inmates experience when denied the opportunity to decontaminate after direct exposure to OC spray. Supervisory defendants were also aware of the pain and suffering inmates experience when provided hot-

water showers as decontamination for OC spray. Prior to this incident, supervisory defendants were aware of many previous complaints from inmates who were denied the opportunity to decontaminate or were provided hot-water showers as decontamination for OC Spray. EOCI designated two cold-water decontamination showers on the second floor of DSU, and the Oregon Administrative Rules (OARs) specifically state that "an adult in custody receiving a direct application of a chemical agent shall be offered a shower as soon as time and circumstance allows." OAR 291-013-0104(5)(k)

27.  Prior to June 3, 2021, supervisory defendants knew or reasonably should have known that proper OC decontamination methods require cold water to avoid reactivating the chemical agent according to the manufacturer's directions and supervisory defendants failed to prevent their subordinates from providing hot water showers to inmates directly exposed to OC spray.

28.  Supervisory defendants failed to train and supervise the prison personnel to provide proper decontamination to inmates who had been sprayed with OC spray to avoid inflicting continuous pain upon inmates once the need for OC spray had ended.

29.  Supervisory defendants knew or reasonably should have known that prison personnel were not consistently providing inmates directly exposed to OC spray with proper decontamination options, and Defendants failed to act to prevent prison personnel from engaging in that conduct.

30.  At all material times, supervisory defendants were aware that warm or hot water can exacerbate the effects of OC spray on inmates and cause undue pain and suffering.

31. Defendants Washburn and Pedro are responsible for staffing EOCI, executing ODOC policy and training, supervising, and disciplining EOCI staff.

**Claim 1: Eighth Amendment – Deliberate Indifference to Medical Needs – Individual Liability (42 U.S.C. § 1983)**

32. Plaintiff restates and incorporates here the allegations in paragraphs (1-31).

33. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments." A "cruel and unusual punishment" includes deliberate indifference to a prisoner's serious medical needs.

34. As described above, Defendants were well-aware of the pain and anxiety suffered by inmates who are affected by OC spray.

35. Defendants Pagliarulo and Brownell were deliberately indifferent to Plaintiff's serious medical needs/serious risk of harm as follows:

    a. In failing to provide Plaintiff with a shower as soon as time and circumstance allowed, or at all, knowing that he was still covered in OC spray and in pain;

    b. In failing to notify other DSU staff, either orally or in writing, that Plaintiff had not received or been offered a shower to decontaminate from the OC spray.

36. Defendant Pagliarulo was deliberately indifferent to Plaintiff's serious medical needs/serious risk of harm by providing Plaintiff with a hot shower, knowing it would reactivate the OC spray and cause Plaintiff exacerbated pain rather than providing him with a cold shower, which was available.

37. Supervisory defendants were deliberately indifferent to Plaintiff's serious medical needs as follows:

      a. In failing to adequately train, discipline, control, and supervise EOCI officers regarding the use of OC spray, including proper decontamination methods.

      b. In failing to take prompt and proper action, such as ordering the installation of cold-water showers on all floors of DSU and requiring their use for decontamination, which resulted in Plaintiff and many other inmates suffering harm from taking hot showers after an OC spray exposure.

38. Supervisory defendants were deliberately indifferent to Plaintiff's serious medical needs in failing to adequately train, discipline, control, and supervise EOCI officers regarding the use of OC Spray, including proper decontamination methods.

39. Defendants' deliberate indifference to Plaintiff's serious medical needs caused Plaintiff's injuries and unnecessary and wanton pain and suffering.

40. As a result of the above, Plaintiff is entitled to all damages in an amount to be ascertained according to proof at trial.

**Claim 2: State Tort (Negligence)**

41. Plaintiff incorporates by reference the allegations set forth *supra* as is set forth fully herein and further alleges:

42. Plaintiff's suffering was a foreseeable result of the failure of Defendants Pagliarulo and Brownell to ensure that Plaintiff was able to access adequate medical care.

43. Defendants Pagliarulo and Brownell were aware of and chose to disregard the non-delegable duty of care owed to Plaintiff following his exposure to OC spray. The breach of the duty of care from the above-described actions of Defendants Pagliarulo and Brownell caused unreasonable and excessive injury to Plaintiff, which was the kind of harm that they could or should have expected to occur due to their actions.

44. In their failure to provide Plaintiff with decontamination after his exposure to OC spray, Defendants Pagliarulo and Brownell directly and proximately caused Plaintiff physical and emotional harm while infringing on Plaintiff's right to adequate medical care.

45. Additionally, in providing Plaintiff with a hot shower, Defendants Pagliarulo and Brownell caused additional harm to Plaintiff by reaggravating the effects of the OC spray several hours after his initial exposure and again approximately two days later, as they knew or should have known would occur.

46. Plaintiff's physical and mental injuries were within the general type or potential incidents and injuries that made the conduct of Defendants Pagliarulo and Brownell negligent. That is, the acts of Defendants Pagliarulo and Brownell created a foreseeable and unreasonable risk of physical and mental harm to Plaintiff that was reasonable to expect would likely result and did result in those same harms to Plaintiff.

47. Supervisory defendants, in their failure to train, discipline, control, and supervise EOCI officers regarding the use of OC spray, including proper decontamination methods, created a foreseeable and unreasonable risk of physical injury and mental harm to Plaintiff that was reasonable to expect would likely and did result in those same harms to Plaintiff.

48. The State of Oregon, through its agency the Oregon Department of Corrections, is vicariously liable to Plaintiff for the negligent conduct of Defendants Pagliarulo and Brownell. The conduct of Defendants Pagliarulo and Brownell took place within their employment with ODOC and in furtherance of the duties Defendants were hired to perform.

49. Additionally, the State of Oregon, by and through its ODOC supervisory staff and policy makers, was aware of and chose to disregard a substantial risk that its defective policies,

practices, and customs with respect to the provisions of decontamination after the exposure of OC spray in EOCI. ODOC's disregard caused suffering and serious physical injury to Plaintiff.

## REASONABLE ATTORNEY'S FEES AND COSTS

50. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. §1983.

51. Plaintiff requests that the court grant a reasonable attorney's fee in this action.

## DEMAND FOR A JURY TRIAL

52. For all claims alleged in this complaint, Plaintiff demands a jury trial.

WHEREFORE, plaintiff prays for relief as follows:

A. Award Mr. Delgado's economic and non-economic damages against defendants in amounts to be determined at trial in accordance with the allegations set forth above;

B. Award Mr. Delago his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

C. Grant such other and further relief as may appear just and proper.

DATE: May 24, 2023.

/s/ *Jonathan Gersten*
Jonathan Gersten, OSB #191582
Oregon Justice Resource Center
*Attorney for Plaintiff*